# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**GWENDOLYN PROPER,**

    Plaintiff,

vs.                                               **CASE NO. 5:10-cv-287-RS-EMT**

**SCHOOL BOARD OF**
**CALHOUN COUNTY FLORIDA,**
**And LADONA KELLEY, individually,**

    **Defendants.**
_____/

## ORDER

Before me is Defendant's motion for summary judgment (Doc. 41).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)).  "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff Gwendolyn Proper was hired by Defendant School Board of Calhoun County in the spring of 2006 as a paraprofessional at Altha Public Schools.  During this year, Proper worked one-on-one with a student known as R.M.  While working with R.M., Proper alleges that she witnessed an incident of

child abuse when a general education teacher placed R.M.'s desk in the doorway of a closet. Proper did not report the alleged abuse.

In July 2006, the School Board hired Proper as a full-time teacher under an annual contract at Blountstown High School. In 2007, the School Board reappointed Proper under a second annual contract and transferred her to Altha Public Schools ("Altha"). At the time of the transfer, Defendant Ladona Kelley was Vice Principal of Altha. In 2008, the School Board again reappointed Proper under a third annual contract at Altha. During the summer of 2008, Proper was subpoenaed to give deposition testimony in a case involving the abuse incident. Proper's testimony was not favorable to the School Board. The next school year, 2009-2010, Kelley assumed the position of Principal at Altha, and Proper was reappointed under a fourth annual contract.

During the 2009-2010 academic year, Proper was a co-teacher with Clint Fussell for approximately thirteen students. Fussell worked as the general education teacher while Proper served as the special education teacher. Three full-time paraprofessionals also worked in the classroom with Proper and Fussell. There were multiple complaints throughout the year from the paraprofessionals regarding the negative atmosphere and Proper's lack of instruction, guidance, and consistency in the classroom.

At the end of the 2009-2010 academic year, Kelley met with Proper to discuss her year-end performance evaluation and to inform Proper of the decision not to recommend her contract for renewal. At this meeting, Kelley did not give Proper a specific reason for her decision and only said that her decision was in the best interest of the school. Proper refused to leave the meeting without feedback, and Kelley told Proper that she was unable to talk about the situation at the meeting. Kelley then said, "I don't know if there is a statute of limitations where [we] could have a conversation." (Doc. 41). Proper believed Kelley's statement regarding the "statute of limitations" referred to Proper's testimony in 2008.

Proper now brings this suit against the School Board and Kelley for First Amendment retaliation under 42. U.S.C. § 1983. Defendants have moved for summary judgment.

### III. ANALYSIS

*First Amendment Retaliation*

To establish a First Amendment retaliation claim, Proper must demonstrate that: (1) her speech was constitutionally protected, (2) she suffered some adverse employment action, and (3) that there is a causal relationship between the adverse action and the protected speech. *Castle v. Appalachian Technical Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011)(citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). "To establish causation, the plaintiff must show that the defendant

was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)(quoting *Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir.2008)). If the plaintiff establishes causation, then the burden of production shifts to the defendant, and if the defendant can show that he would have taken the same action regardless of the protected activity, then summary judgment for the defendant is still proper. *Id.* at 1341-42.

This Court must address the first issue—whether Proper's speech was constitutionally protected. Proper was a public employee. "The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The Supreme Court in *Connick* and *Pickering* has established that public employees' speech will have First Amendment protection when the employee speaks as a citizen about matters of public concern. *Connick v. Myers,* 461 U.S. 138, 140 (1983); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). "The Supreme Court has clarified and simplified this inquiry by holding that 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.' " *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007)(quoting *Garcetti*, 547 U.S. at 421). Therefore, this Court

must first determine whether Proper's statements were made pursuant to an official duty.

Florida Statute § 39.201 (2010) imposes a duty upon all citizens to report suspected child abuse, abandonment, or neglect to the Department of Children and Families. Besides this general duty imposed on all of society to report child abuse, which the School Board reiterates in its official policies, the School Board also made it mandatory for "all employees, agents, and volunteers" of the district "to report all actual and suspected cases of child abuse, abandonment or neglect." (Exhibit 1-I). In addition, the School Board also has a more general provision requiring employees to report any misconduct "that affects the health, safety or welfare of a student" to the Superintendent. (Exhibit 1-I). Proper's argument that "it was not specifically within the province of [her] job . . . to report this type of activity" fails. (Doc. 51). The policies established by the School Board clearly apply to all employees, including Proper.

The fact that Proper made no report of the alleged abuse and only testified during a deposition does not make Proper's speech constitutionally protected. In the Eleventh Circuit case *Morris v. Crow,* a police officer wrote a report implicating another officer as the cause of an accident. 142 F.3d 1379, 1381 (11th Cir. 1998). Morris, the police offer, had a duty to file this report. *Id.* Later, Morris was deposed and reiterated the information in his report, and following his

deposition, Morris was suspended and eventually terminated.  *Id.*  Morris brought a claim for First Amendment retaliation, and the court determined that his speech was not protected because it was made pursuant to an official duty.  *Id.* at 1383.  If Proper had properly reported the child abuse, then her case would be identical to *Morris*.  Proper's failure to make the initial report, although she was mandated to do so, should not entitle her to First Amendment protection.

Proper also argues that her compliance with a subpoena to be deposed was not pursuant to any official duty she had while working at Altha, and therefore, the deposition testimony should be protected.  This argument also fails.  In *Morris*, the Eleventh Circuit held that "[t]he mere fact that Morris's statements were made in the context of a civil deposition cannot transform them into constitutionally protected speech." *Id.*  The same principle can be applied in this case, making Proper's testimony is unprotected speech.  Because Proper's speech is not protected under the First Amendment, the analysis could stop here; however, for argument's sake, the causation prong of the retaliation analysis will also be addressed.  It is undisputed that Proper suffered an adverse employment action by being terminated, so the second prong need not be analyzed.

Even if Proper's speech is protected by the First Amendment, Proper failed to show a causal relationship between the adverse employment action and the protected speech.  Vicarious liability is not recognized in § 1983 actions.  *Goebert*

*v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007).  Instead, "a plaintiff must show that the defendant instituted a custom or policy [that] result[s] in deliberate indifference to constitutional rights or ... directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.* (quoting *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007) (internal quotations omitted)).

   Proper argues that the School Board delegated its policymaking authority to Kelley, who in turn retaliated against Proper because of her testimony.  This argument fails.  There is no evidence that the School Board delegated its policymaking authority.  The Eleventh Circuit has concluded that "[t]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority.  Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review."  *Mandel v. Doe,* 888 F.2d 783, 792 (11th Cir.1989)(citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125-28 (1988)).  In Florida, the School Board is the policymaking authority of the school district. *K.M. v. Sch. Bd. of Lee Cnty. Fla.,* 150 F.App'x 953, 957 (11th Cir. 2005).  In this case, the School Board reviewed Kelley's decision and voted to terminate Proper at a public meeting, which shows that no delegation of policymaking authority occurred because Kelley's recommendation was subject to review.

The School Board could still be liable for a decision if it ratified the decision of a subordinate who did not have final policymaking authority. *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004). To establish "ratification," Proper must show that the School Board had an opportunity to review Kelley's decision and agreed with both the decision and the basis for it. *Id.* The School Board did have the opportunity to review the decision before the meeting, but there is no evidence that Kelley retaliated against Proper. Proper failed to produce any evidence that Kelley knew the contents of her deposition testimony or that Kelley's statement about the "statute of limitations" was directed at Proper's deposition testimony. The School Board certainly cannot agree with the basis for the decision that cannot be shown to exist in the first place. Therefore, the School Board neither delegated its policymaking authority nor ratified Kelley's alleged retaliatory basis for her decision. Without showing either of these, the School Board cannot be held liable.

*Qualified Immunity*

"Qualified immunity allows government employees to carry out their discretionary duties without fear of litigation, 'protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (quoting *Mercado v. City of Orlando,* 407 F.3d 1152, 1156 (11th Cir.2005) (citation omitted)). In analyzing the

affirmative defense of qualified immunity, a two part inquiry is used: "(1) do the alleged facts show that the government actor violated a constitutional right? and (2) was that constitutional right clearly established?" *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech.  *Id.* (citing *Travers v. Jones,* 323 F.3d 1294, 1295 (11th Cir. 2003)).  It is well settled by the Supreme Court that for a government employee's speech to have First Amendment protection, the employee must have (1) spoken as a citizen and (2) addressed matters of public concern.  *Id.*

As explained above, Proper's speech was not protected under the First Amendment.  Therefore, Defendants are entitled to qualified immunity.

## IV. CONCLUSION

Summary judgment is granted for Defendant against Plaintiff.


**ORDERED** on August 12, 2011.


/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**